Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 4, 2018

**2018 CO 47**

**No. 18SA1, <u>In re People v. Austin</u>—Preliminary Hearings.**

Austin petitioned for relief pursuant to C.A.R. 21 from an order of the district court denying his motion for a preliminary hearing. This court issued its rule to show cause why the order should not be disapproved, and the People responded.

The supreme court makes the rule absolute and orders that Austin be given a preliminary hearing because he was charged by information with a class 4 felony committed as a "crime of violence" as defined at section 18-1.3-406(2)(a)(I)(B) and (II)(C) of the revised statutes, which statutorily entitles him to a preliminary hearing, whether or not he would actually be subject to mandatory sentencing for a crime of violence.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 47

**Supreme Court Case No. 18SA1**
*Original Proceeding Pursuant to C.A.R. 21*
Weld County District Court Case No. 17CR1231
Honorable Thomas J. Quammen, Judge

**In Re**
**Plaintiff:**

The People of the State of Colorado,

v.

**Defendant:**

Ilyias Calese Austin.

**Rule Made Absolute**
*en banc*
June 4, 2018

**Attorneys for Plaintiff:**
Michael J. Rourke, District Attorney, Nineteenth Judicial District
Havilah Louise Bruno Lilly, Deputy District Attorney
    *Greeley, Colorado*

**Attorneys for Defendant:**
Douglas K. Wilson, Public Defender
John Walsh, Deputy Public Defender
    *Greeley, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.

¶1    Austin petitioned for relief pursuant to C.A.R. 21 from an order of the district court denying his motion for a preliminary hearing. This court issued its rule to show cause why the order should not be disapproved, and the People responded.

¶2    Because Austin was charged by information with a class 4 felony committed as a "crime of violence" as defined at section 18-1.3-406(2)(a)(I)(B) and (II)(C) of the revised statutes, he is statutorily entitled to a preliminary hearing. The rule is therefore made absolute, and the case is remanded to the district court for further proceedings consistent with this opinion.

**I**

¶3    Ilyias Austin was charged with the class 4 felony of second degree assault committed by intending to cause bodily injury to another person and causing serious bodily injury to that person, as proscribed at section 18-3-203(1)(g), C.R.S. (2017). His subsequently filed motion for a preliminary hearing was denied by the district court.

¶4    After noting that having posted bond, the defendant was at liberty in this case, and that he was therefore statutorily entitled to a preliminary hearing only if the class 4 felony with which he had been charged required mandatory sentencing or was a crime of violence, the district court concluded that the felony with which the defendant was charged met neither condition. With regard to the first condition, the court reasoned that as the result of a 2016 amendment to section 203 ("Assault in the second degree"), continuing to mandate sentencing in accordance with the crime-of-violence statute but relieving the court of any duty to impose a sentence to incarceration for a conviction pursuant to section 203(1)(g), the defendant was not accused of a felony requiring

2

mandatory sentencing. With regard to the second condition, the court appeared to reason that this court had equated crime-of-violence sentencing with mandatory sentencing, and by eliminating mandatory sentencing for subsection (1)(g) assaults, the amendment to section 203 had effectively removed subsection (1)(g) assaults from the classification of "crimes of violence" altogether.

¶5 Pursuant to C.A.R. 21, the defendant now seeks relief from the district court's order.

**II**

¶6 A criminal defendant's right to a preliminary hearing in this jurisdiction is governed by statute and rule. See § 16-5-301, C.R.S. (2017); § 18-1-404, C.R.S. (2017); Crim. P. 7; cf. § 19-2-705, C.R.S. (2017) (prescribing preliminary hearings for juveniles charged with crimes that would be felonies if committed by adults). This right is limited according to a variety of factors, including the nature and seriousness of the crime of which the defendant is accused, the process by which he was charged, the penalty to which he is exposed by that charge, and whether or not he is in custody. See § 16-5-301(1)(a), (b)(I), (b)(II). Unless he is in custody for the offense for which he requests a preliminary hearing, at the time of his request, a person accused of a class 4 felony has a right to such a hearing if, but only if, he was charged by direct information or felony complaint and the felony with which he was charged requires mandatory sentencing or is a crime of violence as defined in section 18-1.3-406. See id.

¶7 Although the term "mandatory sentencing" is not expressly defined in the revised statutes, section 18-1.3-406 is entitled "Mandatory sentences for violent crimes—

3

definitions," and it: (1) expressly defines the term "Crime of violence," see § 18-1.3-406(2)(a)(I), C.R.S. (2017) ("'Crime of violence' means . . ."); § 18-1.3-406(2)(b)(I) ("'Crime of violence' also means . . ."); (2) requires that a person convicted of a crime of violence be, at least initially, sentenced to the department of corrections for a term of incarceration[1] of at least the midpoint in, but no more than twice the maximum of, the presumptive range provided for such offense, see § 18-1.3-406(1)(a); and (3) mandates the charging of separate counts and specific findings as a predicate for crime-of-violence sentencing, see § 18-1.3-406(3), (4). This statute has long been construed, by both this court and the court of appeals, as intending that the mandatory sentences to incarceration provided for crimes of violence apply only upon specific findings of guilt as to separate counts alleging that the crime of which the defendant stands convicted was committed as a crime of violence, as delineated in the statute. See People v. Terry, 791 P.2d 374, 378 n.5 (Colo. 1990); see also People v. Russo, 713 P.2d 356, 364 (Colo. 1986) (holding that in order for the jury to properly make the special finding required by the violent crime statute, the trial court must instruct the jury on both the essential elements of the violent crime charge and the burden of proof applicable to that charge); Brown v. Dist. Court In & For First Judicial Dist., Jefferson Cty., 569 P.2d 1390, 1391 (Colo. 1977); People v. Grable, 611 P.2d 588, 589 (Colo. App. 1979).

---

[1] In addition to section 18-1.3-406, the term "mandatory sentencing" appears in section 18-4-413 (entitled "Mandatory sentencing for repeated felony theft from a store—store defined") and in section 18-18-406(1), (2) (cross-referencing the penalty for class 1 drug felonies).

4

¶8     In an omnibus bill in 1986, however, the legislature amended nine criminal statutes to require that a defendant convicted of crimes proscribed by any of those statutes "shall be sentenced by the court in accordance with the provisions of section 16-11-309."[2]  People v. Terry, 791 P.2d at 377.  After analyzing the language and legislative history of these amendments, we concluded that they effectively required mandatory sentencing as prescribed for crimes of violence, without regard for compliance with the special pleading and proof requirements of the violent crime statute.  See id. at 378.  Nine years later, we further explained the rationale for that holding, referring to those crimes for which a court is required to impose a mandatory sentence without regard for the special pleading and proof requirements of the crime-of-violence statute as "per se crimes of violence" and extending that class of crimes to include even conspiracy to commit per se crimes of violence.  Terry v. People, 977 P.2d 145, 151 (Colo. 1999).

¶9     Finally, two years later, we were called upon to construe the statutory language, "crime of violence, as defined in section 16-11-309," § 18-1-105(9.7)(b)(XII), C.R.S. (1999), as it appeared in a related sentencing statute.  See People v. Banks, 9 P.3d 1125, 1129 (Colo. 2000).  But for the renumbering of the crime-of-violence statute, this language is identical to the pertinent provision of section 16-5-301, governing a defendant's

---

[2] Section 16-11-309 was redesignated 18-1.3-406 by the 2002 act Concerning the Relocation of Certain Existing Criminal Sentencing Statutes to a New Article in Title 18, Colorado Revised Statutes.  Ch. 318, sec. 2, § 18-1.3-406, 2002 Colo. Sess. Laws 1365, 1403–06.

entitlement to a preliminary hearing. See § 16-5-301(1)(a), (b)(I). In a case in which the defendant was convicted of second degree assault on a peace officer, as proscribed at section 18-3-203(1)(c), which statute had been amended in 1988 to include the sentencing provision addressed in the two Terry cases making assault on a peace officer a "per se crime of violence," we were faced with the question whether such a conviction also required "extraordinary risk sentencing," pursuant to section 18-1-105(9.7)(b). Banks, 9 P.3d at 1126. "Crimes which present an extraordinary risk of harm to society," which require "extraordinary risk sentencing," were statutorily defined to include "(a)ny crime of violence, as defined in section 16-11-309." § 18-1-105(9.7)(b), C.R.S. (1999); id. at 1129.

¶10    In holding that "extraordinary risk sentencing" was not mandated, we expressly distinguished mandatory sentencing, or crime-of-violence sentencing, under section 16-11-309, from any "crime of violence, as defined in section 16-11-309," concluding that the former category applies when (1) the statute defining the offense specifically requires sentencing under that section or (2) the prosecution pleads and proves use, or possession and threatened use, of a deadly weapon, or serious bodily injury or death, as to eligible crimes, according to the procedures prescribed by section 16-11-309(4) and (5), Banks, 9 P.3d at 1129–30, 1130 n.9, while the latter category refers to crimes actually meeting the definition of "crimes of violence," as set forth in section 16-11-309(2), id. at 1131. Because the statute defining the assault of which Banks was convicted required mandatory sentencing pursuant to section 16-11-309, it constituted a so-called "per se crime of violence"; nevertheless, because Banks was not found to have committed,

6

conspired to commit, or attempted to commit any of the crimes specified in section 309(2)(a)(II), during which, or in the immediate flight therefrom, he used, or possessed and threatened the use of, a deadly weapon or caused serious bodily injury or death to any other person except another participant—the actual definition of "crime of violence," <u>see</u> § 16-11-309(2)(a)(I), C.R.S. (2000) (currently designated § 18-1.3-406(2)(a)(I))—we held that the crime of which Banks was convicted did not constitute a "crime of violence, as defined in section 16-11-309." <u>Id.</u> at 1131–32.

¶11    In <u>Banks</u>, we therefore made it clear that not every crime for the conviction of which mandatory, or crime of violence, sentencing is required, also constitutes a "crime of violence as defined in section 18-1.3-406"; and by the same token, not every crime constituting a "crime of violence defined in section 18-1.3-406" requires, upon its conviction, mandatory, or crime of violence, sentencing pursuant to section 18-1.3-406. With regard to the former, despite a specific provision in the statute defining the offense that mandates sentencing in accordance with section 18-1.3-406, a conviction may nevertheless not involve any finding, either as an element of the charged offense or by separate crime of violence count, of the deadly weapon or serious bodily injury condition necessary to satisfy the definition of a crime of violence. With regard to the latter, despite conviction of a crime that meets the definition of "crime of violence," the specific charging and finding requirements for mandatory, or crime–of-violence, sentencing may nevertheless not have been complied with.

¶12    As the result of a 2016 amendment to section 18-3-203, courts are no longer required to sentence defendants convicted of second degree assault pursuant to

7

paragraphs (b), (c), (d), and (g) of subsection (1) "in accordance with the provisions of section 18-1.3-406." Ch. 181, sec. 1, § 18-3-203, 2016 Colo. Sess. Laws 620, 620. Rather, convictions pursuant to these statutory subsections require sentencing "in accordance with the provisions of section 18-1.3-406; except that, notwithstanding the provisions of section 18-1.3-406, the court is not required to sentence the defendant to the department of corrections for a mandatory term of incarceration." § 18-3-203(2)(c)(II), C.R.S. (2017) (emphasis added). Whether or not the district court correctly interpreted this amendment as no longer requiring "mandatory sentencing" for convictions of second degree assault proscribed at section 203(1)(g), the amendment clearly does not purport to affect the definition of a "crime of violence" itself.

¶13 The defendant in this case was charged with committing second degree assault as proscribed by section 203(1)(g), by intending to cause bodily injury to another person and causing serious bodily injury to that person. Second degree assault is one of the crimes specified in the definition of "crime of violence," and causing serious bodily injury to another person during the commission of an assault satisfies the remaining condition of the definition. See § 18-1.3-406(2)(a)(I)(B), (II)(C).[3] Regardless of sentencing considerations, just as the charge of assault of which the defendant was

_____

[3] We are aware that (2)(a)(I)(B) limits the "other person" with regard to whom serious bodily injury or death is caused to "any other person except another participant." Because entitlement to a preliminary hearing is predicated on the crime of which the defendant is accused, in the absence of any allegation that the victim specified in the charging document was "another participant," it may be presumed that he was not, for purposes of entitlement to a preliminary hearing.

convicted in <u>Banks</u> did not meet the statutory definition itself and therefore did not constitute a "crime of violence, as defined in section 16-11-309," the crime of assault pursuant to section 203(1)(g), as alleged against the defendant in this case, <u>does</u> meet that definition and therefore <u>is</u> a "crime of violence defined in section 18-1.3-406." See <u>Banks</u>, 9 P.3d at 1131.

¶14 While the word "or" is notoriously ambiguous and takes its meaning from the specific context in which it is used, no one suggests, and it is clearly not the case, that "or" is used in its conjunctive implication in prescribing the right to a preliminary hearing; nor, for the reasons already explained, does it merely offer alternative language expressing the same concept. See <u>People v. Swain</u>, 959 P.2d 426, 430 n.12 (Colo. 1998) (explaining that while the word "or" is generally a disjunctive particle that denotes an alternative, it may also be utilized as a coordinate conjunction introducing a synonymous word or phrase or it may join different terms expressing the same idea or thing). Disjoining alternate conditions, the existence of either of which entitles a defendant to a preliminary hearing, as the word "or" clearly does in this statute, the fact that the defendant stands accused of a crime of violence as defined in section 18-1.3-406 is sufficient in itself to entitle him to such a hearing.

### III.

¶15 Because Austin was charged by information with a class 4 felony committed as a "crime of violence" as defined at section 18-1.3-406(2)(a)(I)(B) and (II)(C) of the revised statutes, he is statutorily entitled to a preliminary hearing. The rule is therefore made

absolute, and the case is remanded to the district court for further proceedings consistent with this opinion.